UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **JEROME WALSH,** : | 3:11cv1947 (WWE) |
| Plaintiff, : | |
| : | |
| **v.** : | |
| : | |
| **LEBANON BOARD OF EDUCATION,** : | |
| and **JANET TYLER,** : | |
| Defendants. : | |

### RULING ON DEFENDANTS' MOTIONS TO DISMISS

In this action, plaintiff Jerome Walsh alleges that defendant Lebanon Board of Education (the "Board") and Janet Tyler are liable for violation of plaintiff's federal constitutional rights to free speech, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act.  As to the Board, plaintiff asserts that it failed to pay him wages in violation of 29 U.S.C. § 201; was unjustly enriched; violated the Connecticut Fair Employment Practices Act; violated Connecticut General Statutes §§ 31-51q and 31-51m; and breached its contract with plaintiff and the covenant of good faith and fair dealing.  As to Tyler, plaintiff asserts that she tortiously interfered with his business relations, defamed him and intentionally inflicted him with emotional distress.  Defendants have filed a motion to dismiss the claims of federal constitutional violation, violation of the ADA and the Rehabilitation Act, violation of the Connecticut General Statutes § 31-51m, breach of contract and the covenant of good faith and fair dealing, tortious interference, and intentional infliction of emotional distress.  Defendants also seek to dismiss plaintiff's request for punitive damages.  In his response, plaintiff states that he has withdrawn his claims of violation of the federal Equal Protection Clause and

1

the Rehabilitation Act against both defendants, and violation of the ADA against Tyler. For the following reasons, the motion will be granted in part and denied in part.

## BACKGROUND

For purposes of ruling on a motion to dismiss, the Court considers the allegations of the complaint to be true.

Plaintiff was employed as a Supervisor of Facilities and Custodial Services for the Lebanon Public School System from June 2003 through May 31, 2011. At the time relevant to this action, Tyler was the Superindent of Schools commencing in July 2010. Until January 28, 2011, plaintiff reported to the Director of Business and Technology. Thereafter, he reported to Tyler.

After the Board outsourced two maintenance worker positions and hired EMCOR, an independent firm, to provide one worker for maintenance services, plaintiff needed to work overtime to complete routine maintenance tasks. Tyler refused to pay him for the extra hours that he worked overtime.

On January 30, 2011, plaintiff attended a meeting at Lyman Memorial High School in Lebanon where Town of Lebanon and school officials expressed concern over the weight of snow that had accumulated on the roofs of the schools in the district.

Tyler directed plaintiff to contact outside contractors to assist school staff with snow removal operations and to call in as many custodians as possible to begin clearing paths to the roof drains through the four feet of snow.

Plaintiff left messages with three contractors. Only one contractor, Eagle Rivet Roofing ("Eagle"), returned his call that day. Bill Bernhardt of Eagle informed plaintiff that he had a crew that could start work the next day, although he did not commit to a

price at that time. After plaintiff conveyed his conversation with Bernhardt to Tyler, Tyler approved the engagement of Eagle.

On January 31, Eagle began the snow removal from the high school roof. Plaintiff contacted Bernhardt to obtain the estimated price for the snow removal, and Bernhardt informed him that he was still calculating the price. Plaintiff informed Tyler of this conversation and she allowed Eagle to continue the snow removal.

On February 1, plaintiff spoke with Bernhardt regarding the price of the snow removal. Bernhardt stated that he was still calculating the price. Plaintiff informed Tyler of this conversation and Tyler allowed Eagle's snow removal to continue.

On February 2, Bernhardt informed plaintiff that the snow removal work completed by that date would cost between $160,000 and $184,000. After plaintiff so informed Tyler, she allowed the snow removal by Eagle to continue.

In a meeting on February 3, plaintiff, Tyler, Bernhardt, Board member Keith Wentworth, and Board Chair Melissa Hoffman agreed that Eagle should continue the snow removal work.

On February 5, Eagle completed the removal of the snow from all of the high school building roofs. On February 10, 2011, Eagle submitted a final invoice in the amount of $303,160 for the snow removal.

At a public meeting on February 10, 2011, the Lebanon Board of Finance discussed the snow removal invoice and questioned whether defendant Board had

followed proper policies and procedures in retaining Eagle.  Taxpayers expressed outrage about the cost of the snow removal.

On February 15, Tyler suspended plaintiff for eight days without pay based on his mishandling of the emergency snow removal contract.  Tyler also placed a letter in plaintiff's personnel file that placed the blame on plaintiff for the hiring of Eagle.  This letter was obtained and published by the Chronicle of Willimantic, a local newspaper.

On February 16, plaintiff submitted a claim for unemployment compensation along with a document detailing his version of events leading to the retention of Eagle.  Plaintiff also informed Board members about Tyler's involvement.  At a public meeting, he spoke about the engagement of Eagle for snow removal; his comments were quoted in at least one newspaper article.

When he returned to work after his suspension, plaintiff found that his working conditions and environment had deteriorated.  Tyler was more sarcastic, meaner and ruder to him.  She instituted a new reporting system which required plaintiff to submit a report by each Monday morning detailing all of his work on a daily basis for the previous week.  Tyler required plaintiff to attend a meeting with her every Monday morning, at which time she would verbally abuse and belittle him.

On April 14, the Board's Finance/Budget Subcommittee met with Tyler and Hoffman to discuss cost and potential savings to the district by outsourcing the custodial and maintenance areas, among others.  On May 24, the Board voted to outsource plaintiff's position to EMCOR effective July 1, 2011.  Plaintiff's position was the only one outsourced at this time.

On May 31, Tyler terminated plaintiff's employment. To date, she has refused to pay plaintiff for all of his accrued vacation time, business use of his personal vehicle, and overtime.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff is obliged to amplify a claim with some factual allegations to allow the court to draw the reasonable inference that the defendant is liable for the alleged conduct. Ashcroft v. Iqbal, 556 U.S. 662 (2009).

On a motion to dismiss, the Court may examine documents attached to the complaint as exhibits, incorporated by reference, or that are integral to or referenced in the pleading. Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991). The Court may also consider documents in the public record that are integral to the complaint. Koch v. Christie's Intern. PLC, 699 F.3d 141, 147 (2d Cir. 2012). Relevant to this action, courts have considered school board policies that are a matter of public record and subject to judicial notice. See Gardner v. Miami-Yoder School Dist. JT-60, 2010 WL 4537951, *1 (D. Colo. 2010). If the Court takes judicial notice, it does so in

order to determine what statements are contained therein but not for the truth of the matters asserted.  Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).[1]

### A. Constitutional Claims

Plaintiff asserts that defendants retaliated against him for exercise of his First Amendment rights and denied him his due process rights based on deprivation of his property and liberty interests.

#### 1. First Amendment

Plaintiff alleges that defendants retaliated against him for his verbal and written explanations about Tyler's role in the retention of the snow removal contractor.  Defendants argue that plaintiff's speech was not on a matter of public concern.

Plaintiff must establish that: (1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech.  Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011).

To receive First Amendment protection, an employee must speak "as a citizen on a matter of public concern."  Garcetti v. Ceballos, 547 U.S. 410, 418 (2006).  Whether speech touches upon a matter of public concern is a question of law that should be answered after examination of the content, form and context of a given statement after examination of the whole record.  Jackler v. Byrne, 658 F.3d 225, 235 (2d Cir. 2011).  To constitute speech on a matter of public concern an employee's expression must "be fairly considered as relating to any matter of political, social, or

---

[1] The Court takes judicial notice of the Board's policies, which are subject to public record pursuant to Connecticut General Statutes § 1-200.

other concern to the community." Connick v. Myers, 461 U.S. 138, 146 (1983).  Speech that touches upon a matter of general importance but that concerns an issue that is "personal in nature and generally related to [plaintiff's] own situation," such as his assignments, promotion, or salary, does not address matters of public concern. Ezekwo v. NYC Health & Hospitals Corp., 940 F.2d 775, 781 (2d Cir. 1991).  The government could not function if every employment decision became a constitutional matter.  Garcetti, 547 U.S. at 419.

A topic is a matter of public concern for First Amendment purposes if it is "of legitimate news interest" or of value and concern to the public at the time of the speech. City of San Diego v. Roe, 543 U.S. 77, 83-84 (2004).  The question is whether the matter is of public concern not whether the speech was also made to serve some private interest.  Nagle v. Marron, 663 F.3d 100, 107 (2d Cir. 2011).  A speaker's motive may be relevant, but it is not dispositive to the matter of whether it related to a matter of public concern.  Rueland v. Hynes, 460 F.3d 409, 417-18 (2d Cir. 2006).

Here, defendants argue that plaintiff's statements relating to Tyler's role in retention of the contractor concerned his personal interest in retaining his job and defending his reputation rather than a matter of public concern.  The statements at issue concerning the retention of the snow removal contractor were made a document that plaintiff filed in connection with his request for unemployment benefits, at public meetings and in conversations with Board members.  On this motion, the Court can review the document filed in connection with the unemployment benefits request, but the Court has no information concerning the specifics of plaintiff's oral communication at public meetings or with Board members.  Plaintiff has alleged that newspaper reports

7

about the issue included statements made about him and made by him, and the Court notes that the cost of the snow removal and how the Board became saddled with such a high contractor bill could constitute a matter of public concern. However, without the benefit of review of the full record, the Court will decline to make a determination as a matter of law as to whether plaintiff's speech touches upon a matter of public concern. Based on the allegations, the Court finds that the plaintiff has stated a plausible claim that his termination constitutes First Amendment retaliation.

Defendants assert that Tyler is entitled to qualified immunity on this claim. However, the qualified immunity analysis requires the Court to determine whether the official's conduct violated a constitutional right, and if so, whether that right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001). The Court has found that factual record at this stage of the proceedings precludes a determination of whether a constitutional violation occurred. Accordingly, the Court will not dismiss this claim on the basis of qualified immunity.

    2.    <u>Due Process</u>

In his complaint, plaintiff alleges that his termination and suspension represented a violation of due process due to deprivation of his property and liberty interests. Defendants argue that plaintiff cannot advance his due process claim because he lacks both property and liberty interests.

The Due Process Clause of the Fourteenth Amendment requires that, generally, a person must be afforded the opportunity for a hearing prior to being deprived of a constitutionally protected liberty or property interest. U.S. Const. amend XIV, § 1; <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 569-70 & n.7 (1972). Thus, in order to sustain an

action for deprivation of property without due process of law, a plaintiff must first identify a constitutionally-protected property or liberty right. White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1061 (2d Cir. 1993).

        a.      Property Interest

Property interests are created pursuant to existing rules stemming from independent sources such as state laws or "understandings that secure certain benefits." Roth, 408 U.S. at 577. As Roth explained, a "unilateral expectation" is not sufficient to establish a constitutionally-protected property right; plaintiff must have a "legitimate claim of entitlement" to the property interest. Id.

Employees at-will do not possess a property interest in continued employment. Goetz v. Windsor Cent. Sch. Dist., 698 F.2d 606, 608 (2d. Cir. 1983). However, a public employee who has a right not to be fired without just cause has a property interest in his employment. Otero v. Bridgeport Housing Auth., 297 F.3d 142, 151 (2d Cir. 2002). In this instance, plaintiff has alleged that the Board "had a policy or practice of only terminating employees for good cause." Plaintiff has attached to the complaint an appointment letter from then-Superintendent of Schools confirming his status as an at-will employee. Plaintiff has not alleged that he had any contractual understanding or that any law provided him with an expectation that he would not be fired without good cause. The Second Circuit held that a plaintiff-employee who has been promised something about the specific conditions of his or her future employment may retain a property interest. See Ezekwo v. New York City Health and Hosps. Corp., 940 F.2d 775, 782 (2d Cir. 1991) (plaintiff was told verbally and in writing that she could expect to be chief resident in her third year of residency); Ciambrello v. County of Nassau, 292

9

F.3d 307, 319 (2d Cir. 2002) (a collective bargaining agreement provided that plaintiff would not be demoted without engaging in incompetence or misconduct); Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 212 (2d Cir. 2003) (plaintiff was contractually promised that she would be reappointed to an available position).  By contrast, plaintiff does not allege that a written or verbal communication gives rise to his entitlement to be terminated for good cause only.  Thus, plaintiff has only a "unilateral expectation" that he would be terminated for good cause only, and therefore, he has not adequately alleged a plausible constitutionally-protected property interest.  See Looney v. Black, 2012 WL 6633949, *7 (2d Cir. 2012) (finding no property interest in continued full-time employment without any written or spoken guarantee as to the term of employment).  Accordingly, the Court will dismiss the claim of due process deprivation based on a property interest.

      b.     Liberty Interest

Plaintiff may establish a liberty interest if (1) the government made a stigmatizing statement about him that denigrated his professional reputation; (2) such statement was made public; and (3) the stigmatizing statement was made concurrently with or in close temporal relationship to the plaintiff's termination.  Segal v. City of New York, 459 F.3d 207, 212 (2006).

Plaintiff may satisfy the temporal proximity element where the stigmatizing statements and the termination appear connected due to their order of occurrence or their origin, and the actor imposing the termination, either implicitly or explicitly, adopted such statements.  Velez v. Levy, 401 F.3d 75, 89 (2d Cir. 2005).

In this instance, plaintiff has alleged that Tyler made stigmatizing statements

10

denigrating his reputation; that these statements were made available to the public; and that plaintiff's termination was orchestrated by Tyler and occurred approximately three months after these statements were made.  Plaintiff has alleged sufficient facts to establish a stigma plus claim based on his termination.

However, case law has established that a suspension without pay is not sufficient to support a claim of a protected liberty interest.  <u>Munno v. Town of Orangetown</u>, 391 F. Supp. 2d 263, 272 (S.D.N.Y. 2005).  Accordingly, the Court will dismiss the assertion of a stigma plus claim based on plaintiff's suspension.

Defendants contend that, even if plaintiff has established a prima facie case, dismissal is required because plaintiff failed to avail himself of the appeal procedure provided by the Board's Resolution of Problems or Complaints for Non-Unionized Personnel," which is applicable to complaints and problems of the non-union employees.

The availability of an adequate post-termination name-clearing hearing is sufficient to defeat a claim of a liberty interest deprivation due to stigma plus termination. <u>Segal</u>, 459 F.3d at 214.  In <u>Segal</u>, the hearing procedures allowing for the presentation of evidence and witnesses were deemed sufficient for purposes of due process.  Similarly, no due process violation occurred where the deprivation at issue could be fully remedied through grievance procedures provided for in a collective bargaining agreement, which procedures included for the allowance of a hearing. <u>Coollick v. Hughes</u>, 699 F.3d 211, 221 (2d Cir. 2012).

Review of the Board's policy in this instance shows that plaintiff could have availed himself of the following procedure: (1) After discussion of his complaint or problem with his supervisor, or if necessary, the superintendent, plaintiff could submit a written statement of his problem to his supervisor; (2) if he was dissatisfied with the disposition by the supervisor, he could submit an appeal to the superintendent; (3) the superintendent's decision could be appealed to the Board, which would resolve the problem or complaint by meeting with the complainant after its regularly scheduled meeting. These procedures do not clearly afford plaintiff a name-clearing hearing sufficient for purposes of due process as described by Second Circuit precedent. Accordingly, the Court will not dismiss plaintiff's stigma plus liberty interest claim as a matter of law. On summary judgment, the Court may better assess the appeal procedures that would have been afforded to plaintiff.

Defendants assert that Tyler is entitled to qualified immunity on this claim. The Court finds that the factual record at this stage of the proceedings precludes a determination of whether a constitutional violation occurred. Accordingly, the Court will not dismiss this claim on the basis of qualified immunity.

3.  <u>Monell Claims Against the Board</u>

Defendants maintain that the complaint is insufficient to establish liability against the Board except on his allegations related to his termination, which was approved by the Board. Thus, defendants attack the claim against the Board based on a hostile environment created by Tyler.

To establish municipal liability in a Section 1983 action, plaintiff must establish that the violation of his civil rights resulted from a municipal custom or policy. <u>See</u>

Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690 (1978).  The plaintiff must demonstrate that through deliberate conduct, the municipality was the moving force behind the alleged injury.  Bd. of County Comm'ns of Bryan County v. Brown, 520 U.S. 397, 404 (1997).  To hold a municipality liable for civil rights violations, plaintiff must establish that his injury resulted from an official policy or custom perpetuated by supervisory officials of the municipality, rather than employees at the non-policy making level.  Ricciuti v. New York Transit Authority, 941 F.2d 119, 122 (2d Cir. 1991).

Plaintiff has not alleged that the Board was involved or knew about the alleged hostile environment created by Tyler.  Accordingly, plaintiff's claim of First Amendment retaliation based on a hostile environment created by Tyler will be dismissed as to the Board.

**B.     State Law Claims**

   1.     Retaliation Pursuant to Connecticut General Statutes § 31-51q

Plaintiff's allegations in support of his state law claim pursuant to Section 31-51q mirror that of First Amendment retaliation claim.

Section 31-51q provides that:

> Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge . . . .

To make out a prima facie case, plaintiff "must show that (1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on

matters of personal interest; (2) he suffered an adverse employment action; and (3) the speech was at least a substantial or motivating factor in the adverse employment action." Lynch v. Ackley, 2012 WL 6553649, *8 (D. Conn. 2012). Defendants argue that plaintiff has not alleged that his speech touched upon a matter of public concern. For the reasons discussed relevant to the First Amendment retaliation claim, the Court requires review of the full record to determine whether plaintiff's speech constituted a matter of public concern. Because the Court does not have the full record before it on this motion, the Court will deny the motion to dismiss on this claim.

      2.      <u>Whistle Blower Connecticut General Statutes § 31-51m</u>

Defendants maintain that plaintiff's claim pursuant to Section 31-51m is not plausible without allegations supporting a retaliatory animus or decision by the Board.

Section 31-51m protects an employee from discharge, discipline or other penalty if they report "verbally or in writing, to a public body concerning the unethical practices, mismanagement or abuse of authority" of an employer. Plaintiff alleges that "some or all of the members of the Board voted to outsource Plaintiff's position in retaliation for Plaintiff's actions in speaking out and/or publicizing Tyler's false claims regarding the snow removal incident." Plaintiff also alleges that he published his document detailing the retention of the contractor and spoke to Board members and other officials about Tyler's involvement in the snow removal process, and that his position was thereafter terminated. He has stated sufficient allegations to state a plausible claim pursuant to Section 31-51m.

3.   Breach of Contract

Defendants seek dismissal of plaintiff's breach of contract claim, which is premised upon the Board's alleged "policy or practice of only terminating employees for good cause."

Under Connecticut law, an employee has an at-will status in the absence of a contract to the contrary. Thibodeau v. Design Group One Architects, LLC, 260 Conn. 691, 697-690 (2002). Employment contracts which are for an indefinite term are terminable at-will by either party. Ward v. Distinctive Directories, LLC, 104 Conn. App. 258, 259 (2007). Plaintiff's claim alleging the existence of an implied agreement between the parties requires that the employer agreed through words, action or conduct to undertake some form of actual contractual commitment to terminate plaintiff for cause only. Torosoyan v. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 15 (1995). An implied contract depends upon an actual agreement. D'Ulisse-Cupo v. Bd. of Directors of Notre Dame High School, 202 Conn. 206, 211 n.2 (1987).

Here, plaintiff premises his contract claim on alleged custom and usage that plaintiff would only be terminated for cause. However, plaintiff has failed to state facts that support a plausible contract based on agreement between the parties. Accordingly, the contract claim will be dismissed.

4.   Breach of Covenant of Good Faith and Fair Dealing

Plaintiff's assertion of breach of the covenant of good faith and fair dealing will also be dismissed in light of plaintiff's failure to allege a plausible contract claim. Hoskins v. Titan Value Equities Group, Inc., 252 Conn. 789, 793 (2000) (the existence

of a contract is necessary to any claim of a breach of the covenant of good faith and fair dealing).

     5.    <u>Tortious Interference with Business Relationship</u>

Plaintiff alleges that Tyler maliciously, recklessly and intentionally interfered with his business relationship with the Board. He asserts that he was terminated due to Tyler's actions and false representations. Defendants argue that the tortious interference with business relations should be dismissed because plaintiff's allegations against defendant Tyler concern her conduct within the scope of her authority as Superintendent.

Tortious interference with contractual relations cannot be maintained when an agent acting legitimately within the scope of authority interferes with or induces a principal to breach a contract between that principal and a third party. <u>Wellington Systems, Inc. v. Redding Group, Inc.</u>, 49 Conn. App. 152, 168 (1998). Plaintiff's tortious interference claim fails to allege that Tyler acted outside of her authority when she allegedly caused the Board to terminate his position. Accordingly, the motion to dismiss will be granted on this claim.

     6.    <u>Intentional Infliction of Emotional Distress</u>

Defendants assert that plaintiff has failed to allege conduct sufficiently extreme and outrageous to support his claim of intentional infliction of emotional distress.

Liability for intentional infliction of emotional distress requires conduct exceeding all bounds of decent society and which is calculated to cause, and does cause, mental distress of a very serious kind. <u>DeLaurentis v. New Haven</u>, 220 Conn. 225, 266-67 (1991). Connecticut courts have narrowly defined the boundaries of extreme and

outrageous conduct.  See Grasso v. Connecticut Hospice, Inc., 138 Conn. App. 759, 2012 WL 4872783, *8 (Oct. 23, 2012) (citing cases finding no intentional infliction of emotional distress).  In the employment context, an employer's routine adverse employment action, even if improperly motivated, does not constitute extreme and outrageous behavior unless conducted in an egregious and oppressive manner.  Sousa v. Rocque, 2012 WL 4967246, * 7 (D. Conn. Oct. 17, 2012).  Connecticut superior courts have held that a defendant's allegedly false reporting of an employee's conduct does not rise to the level intentional infliction of emotional distress.  See Gillians v. Vivanco-Small, 128 Conn. App. 207, 213, cert. denied, 301 Conn. 933 (2011) (no claim for intentional infliction of emotional distress based on allegations that defendant co-workers conspired to create hostile work environment including falsely accusing plaintiff of racial and sexual bias and giving negative performance); Tracy v. New Milford Public Schools, 101 Conn. App. 560, 569, cert. denied, 284 Conn. 910 (2007) (defendants who harassed, intimidated, defamed and then disciplined plaintiff without proper investigation did not engage in extreme and outrageous conduct).

Plaintiff alleges that Tyler wrote an inaccurate assessment of his handling of the retention of contractor for snow removal, exhibited hostility toward him, and was involved in the decision to outsource his job.  These allegations do not rise to the level of extreme and outrageous conduct exceeding all boundaries of decent society.  Accordingly, the motion to dismiss will be granted on this count.

      7.    Punitive Damages Against the Board

Defendants assert that the request for punitive damages on the claims against the Board should be dismissed.  Plaintiff poses no objection, and the Court finds that it

is proper to dismiss such claim for punitive damages.  See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) (punitive damages not available against municipalities on Section 1983 claims); City of Hartford v. Int'l Ass'n of Firefighters, Local 760, 49 Conn. App. 805, 266 (1998) (punitive damages should not be awarded against municipality on state law claims).

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss [doc. #32] is GRANTED in part and DENIED in part.  The Court dismisses plaintiff's claims of (1) due process deprivation of his property interest; (2) due process deprivation of his liberty interest based on his suspension; (3) First Amendment retaliation based on a hostile environment against the Board; (4) breach of contract, (5) tortious interference with his business relationship with the Board, and (6) intentional infliction of emotional distress. The Court also dismisses the request for punitive damages against the Board.

Plaintiff is instructed to file an amended complaint consistent with this ruling within fifteen days of this ruling's filing date.

                                    _____/s/_____
                                    Warren W. Eginton
                                    Senior U.S. District Judge

Dated at Bridgeport, Connecticut this _31st_ day of January 2013.